**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

DAVIT TOPHURIA,

      Petitioner,

v.                                                                    Civ. No. 26-374 JB/GJF

WARDEN, Otero County Processing Center,
MARY DE ANDA-YBARRA, Field Office Director of
Enforcement and Removal Operations, El Paso
Field Office, Immigration and Customs
Enforcement; TODD LYONS, Acting Director
Immigration and Customs Enforcement;
KRISTI NOEM, Secretary, U.S. Department
Of Homeland Security; and PAMELA BONDI,
U.S. Attorney General,

      Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON PETITION FOR**
**WRIT OF HABEAS CORPUS (DKT. NO. 1)**

THIS MATTER is before the Court on the *Petition for Writ of Habeas Corpus* (Dkt. No.

1) ("Petition") filed February 11, 2026, by Petitioner Davit Tophuria ("Petitioner" or "Mr.

Tophuria"), who is proceeding *pro se*. While the form *pro se* Petition named only the Warden of

the Otero County Processing Center, which is standard in non-immigration cases, the Court in its

*Order to Answer* added the above-mentioned parties as Respondents. *See* Order to Answer 1 n.1,

Dkt. No. 4. Respondents Mary De Anda-Ybarra, Todd Lyons, Kristi Noem, and Pamela Bondi

(collectively, the "Federal Respondents") responded to the Petition. Resp., Dkt. No. 6. Although

the Warden has not separately responded, the Federal Respondents assert that their arguments

apply equally to the Warden. *Id.* at 1 n.1. The. The Court will thus refer to the respondents

collectively as "Respondents" herein. Petitioner subsequently filed letters (Dkt. Nos. 10-11) and

various exhibits (Dkt. No. 7), which the Court construes collectively as a reply. The Court finds

that the Petition is ready for a decision and no evidentiary hearing is needed. Having considered

the briefing, the evidence, and the law, the Court recommends that the Petition be granted and that the Court enter an order requiring the immigration court to hold a prompt individualized bond hearing within seven days.

## I.    INTRODUCTION

This case is one of hundreds of § 2241 habeas cases brought in this District and one of thousands brought in districts across the nation stemming from a new interpretation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2)(A), by the Department of Homeland Security ("DHS"). From 1997 to 2025, through five successive presidential administrations, when United States Immigration and Customs Enforcement ("ICE") detained noncitizens[1] within the interior of the United States who did not have a pending order of removal, it did so under 8 U.S.C. § 1226. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th Cir. 2026). On July 8, 2025, however, DHS issued new interim guidance that all noncitizens who enter the country without being admitted or who arrive without proper documentation are subject to *mandatory* detention, regardless of their length of residency in the country, unless they are paroled under INA § 212(d)(5). *See id.*

The Board of Immigration Appeals ("BIA") considered this new policy interpretation in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sept. 5, 2025). The BIA held that the plain language of 8 U.S.C. § 1225(b)(2)(A) deprived immigration judges of authority to hear bond requests or to grant bonds to aliens who are present in the United States without admission. *Id.* at 225. Yajure Hurtado had crossed into the United States without inspection in 2022, lived in the United States for years, was granted temporary protected status in 2024 by the United States Citizenship and Immigration Services ("USCIS"), but was arrested after that status expired. *Id.* at

---

[1] The INA defines an "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). This PFRD uses "alien" and "noncitizen" interchangeably.

216-17. The BIA concluded, "Aliens, like respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer." *Id.* at 228. "Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.'" *Id.*

The BIA considered significant the history and passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which substituted the term "admission" for "entry" and replaced deportation and exclusion proceedings with removal proceedings. *Id.* at 222-23. As the BIA explained, Congress enacted the IIRIRA to remedy the unintended consequence of having created a statutory scheme where aliens who enter without inspection could take advantage of greater procedural and substantive rights afforded in deportation proceedings, while aliens who presented themselves at the border were limited to more summary exclusion proceedings. *Id.* at 223 (quoting *Martinez v. Attorney General of U.S.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012)). Consequently, according to the BIA, aliens who enter without inspection or admission are "applicants for admission," *id.* at 224, regardless how long they have lived here, until an immigration officer determines that they are "clearly and beyond a doubt entitled to be admitted," *id.* at 228 (quoting 8 U.S.C. § 1225(b)(2)(A)). In the wake of *Yajure Hurtado*, immigration judges have uniformly concluded that they lack jurisdiction to hold bond hearings for detainees held under § 1225(b)(2)(A).[2]

Here, the Court construes the Petition as asserting that Petitioner may only be detained under § 1226, which entitles him to bond hearing. For their part, Respondents contend Petitioner

---

[2] *Yajure Hurtado* is called a "precedential" opinion, which in this context means a decision identified by the BIA as binding authority on U.S. immigration courts. The Supreme Court recently directed district courts to "exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024). Courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 413. Consequently, while binding on immigration courts, *Yajure Hurtado* is not binding on this Court.

is properly detained under § 1225(b)(2)(A) because he is an applicant for admission, and his due process rights are limited to the statutory rights set forth in § 1225. For the following reasons, the Court recommends concluding that § 1225(b)(2)(A) does not apply to Petitioner, and that Respondents violated the INA and the Due Process Clause when subjecting him to mandatory detention for months without a bond hearing.

## II.    FACTUAL BACKGROUND

Davit Tophuria is a citizen of Georgia. Gov.'s Ex. 1 at 1-2, Dkt. No. 6-1. On March 12, 2024, the United States Customs and Border Patrol ("USCBP") arrested Mr. Tophuria as he tried to enter the United States at or near San Ysidro, California, without inspection. *See id.* at 2. On March 15, 2024, USCBP served him with a Notice to Appear, which alleged that he is "an alien present in the United States who has not been admitted or paroled," and he is not a citizen or national of the United States. *See* Gov.'s Ex. 2 at 1-2, Dkt. No. 6-2. The Notice to Appear charged that Mr. Tophuria is subject to removal under § 212(a)(6)(A)(i) of the INA. *Id.* at 1. The same day, he was released on an Order of Release of Recognizance (I-220A). Gov.'s Ex. 1 at 2, Dkt. No. 6-1; Gov.'s Ex. 8 at 1, Dkt. No. 6-8. The Notice ordered him to appear before an immigration judge in New York on May 7, 2025. Gov.'s Ex. 2 at 1, Dkt. No. 6-2.

On October 8, 2025, the Suffolk County Police Department arrested Petitioner for petit larceny. *See* Gov.'s Ex. 1 at 2, Dkt. No. 6-1. On November 13, 2025, ICE officers arrested and detained him in New York pursuant to a Form I-200 Warrant of Arrest of Alien issued by a deportation officer purportedly as per the Laken Riley Act. *See* Gov.'s Ex. 1 at 2, Dkt. No. 6-1; Gov.'s Ex. 3, Dkt. No. 6-3. Enforcement and Removal Operations ("ERO") New York City cancelled Petitioner's order of release on recognizance and detained him without bond. *See* Gov.'s Ex. 1 at 3, Dkt. No. 6-1.

4

On December 15, 2025, DHS transferred Petitioner to a detention facility in El Paso, Texas. Gov.'s Ex. 4, Dkt. No. 6-4. DHS then transferred him to the Otero County Processing Center in New Mexico, where he is currently being held. *See* Petition ¶ 3, Dkt. No. 1. He subsequently had master calendar hearings scheduled before an immigration court on January 20, 2026; February 11, 2026; and February 24, 2026. *See* Gov.'s Ex. 5-7, Dkt. Nos. 6-5 to 6-7. He has an individual hearing set before the immigration court on April 20, 2026. *See* Notice, Dkt. No. 11 at 2 of 41. There is no final order of removal. *See* Petition, Dkt. No. 1 at 8 of 16.

### III.   PROCEDURAL HISTORY

Mr. Tophuria filed this *Petition for writ of habeas corpus* under 28 U.S.C. § 2241 challenging his detention without a constitutionally adequate bond hearing despite his compliance with all proceedings, lack of danger, or flight risk. Petition, Dkt. No. 1 at 2 of 16. He asserts that his unlawfully prolonged detention violates the Due Process Clause of the Fifth Amendment. *Id.* at 12 of 16. He requests release from ICE custody or a prompt bond hearing before an immigration judge at which the government bears the burden of justifying continued detention. *Id.* at 2 of 16.

In response, Respondents urge the Court to deny the Petition for three reasons. *See* Resp. 2, Dkt. No. 6. First, they argue he never sought or underwent a custody redetermination hearing, so he failed to exhaust his administrative remedies. Second, they assert that Petitioner, who unlawfully entered the United States without inspection and without lawful status, is correctly classified as an "applicant for admission" under § 1225(b)(2)(A) based on the text of the statute and *Yajure Hurtado*. Third, Respondents contend that he is not entitled to additional due process beyond that prescribed by statute. Should the Court find that § 1226 applies, Respondents insist that a bond review is the appropriate remedy rather than immediate release.

Petitioner submitted a letter dated March 5, 2026, asking, "I[] don't know if is possible to ask judge to don't give or block my final court on Otero Processing Center because I am know nobody listen my case or my problem there and I want fight for my case outside in N.Y." Letter, Dkt. No. 10. He requests the Court to "cancel my courts here or take decision on my case [as] soon as possible (immediately)." *Id.* He asserts he was illegally arrested and held illegally for four months. *Id.* Petitioner submitted character references, letters of recommendation, and other evidence of employment. *See* Exs., Dkt. No. 7. On March 26, 2026, he submitted another letter, reiterating he has been unlawfully detained for approximately 18 weeks and attaching numerous exhibits, all of which the Court has reviewed. *See* Letter, Dkt. No. 11.

## IV.    LEGAL OVERVIEW

An immigration judge conducts proceedings to decide the inadmissibility or deportability of an alien. 8 U.S.C. § 1229a(1)(1). Aliens placed in removal proceedings may be charged with an applicable ground of inadmissibility under § 1182(a) or of deportability under § 1227(a). Inadmissible aliens are "ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). "[A]ny immigrant at the time of application for admission" who does not possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title" is "inadmissible." *Id.* § 1182(a)(7)(A)(i)(I). Proceedings under § 1229a, unless otherwise specified, "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." *Id.* § 1229a(a)(3).

6

The statutory provisions at issue in this case are those governing mandatory detention in 8 U.S.C. § 1225, and the "Apprehension and detention of aliens" in 8 U.S.C. § 1226. After discussing these INA provisions and implementing regulations in more detail, the Court will turn to an overview of due process law in the immigration context before analyzing how the law applies to Petitioner's detention.

### A. Overview of Sections 1225 and 1226

"Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings" to give "immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). Sections 1225 and 1226 govern the detention of noncitizens prior to a final order of removal. *See id.* at 287-89. "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)" and "to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289.

Generally, a non-citizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). The implementing regulations define an "arriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry , or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-

entry, and regardless of the means of transport." 8 C.F.R. § 1001.1(q). "An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." *Id.*[3] An alien who is caught trying to enter at a place other than a port of entry is treated as an arriving alien. *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 108 (2020) (citing 8 U.S.C. §§ 1225(a)(1), (3)). All aliens "who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). "Admission" or "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1225(a) also provides for the "Withdrawal of application for admission": "An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission to the United States*, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible." *Id.* § 1225(a)(5) (emphasis added).

Section 1225(b)(1) sets forth the procedures for the "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. §

---

[3] The Secretary of Homeland Security may "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Granting such parole, however, "shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Based on the record before it, the Court finds that Petitioner was not granted humanitarian parole under § 1182(d)(5)(A).

1225(b)(1). An immigration officer may order expedited removal of an arriving alien without further hearing or review if the officer determines that the alien is inadmissible under § 1182(a)(6)(C) or 1182(a)(7), provisions governing inadmissibility due to fraud, misrepresentation, or lack of valid documentation. 8 U.S.C. § 1225(b)(1)(A)(i); *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(i) (in turn citing §§ 1182(a)(6)(C), (a)(7))). Aliens also subject to expedited removal are those designated by the Attorney General in her discretion. *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(iii)).

Section 1225(b)(2) governs "Inspection of other aliens." 8 U.S.C. § 1225(b)(2). "Section 1225(b)(2) is broader" than § 1225(b)(1) and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Jennings*, 583 U.S. at 287. Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien **seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding…." 8 U.S.C. § 1225(b)(2)(A) (bold added); *Jennings*, 583 U.S. at 288. Detention under § 1225(b) is mandatory until immigration officers decide either the application for asylum or until removal proceedings conclude. *Jennings*, 583 U.S. at 299-300. Except for temporary parole under 8 U.S.C. § 1182(d)(5)(A) for urgent humanitarian reasons or significant public benefit, "there are no *other* circumstances under which aliens detained under § 1225(b) may be released." *Id.* at 300.

Section 1226(a) establishes the process of arresting and detaining noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. As the Supreme Court explained, "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id.* Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and

detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). As a matter of federal regulation, noncitizens detained under § 1226(a) generally "receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

According to the federal regulations pertaining to "Apprehension, custody, and detention," at the time of issuance of the notice to appear, or anytime afterwards, and until removal proceedings are concluded, the noncitizen "may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). Section 236.1(d)(1) provides:

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, … the immigration judge is authorized to exercise the authority in section 236 of the Act … to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released….

8 C.F.R. § 236.1(d)(1).

The Attorney General "may release the alien" on bond or conditional parole, unless the alien has committed certain criminal offenses or terrorist activities listed in § 1226(c), in which case detention is mandatory. *See* 8 U.S.C. § 1226(a)(2)(A)–(B), (c); *Jennings*, 583 U.S. at 288-89, 303. "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). In 2025, Congress passed the Laken Riley Act, which added additional criminal conduct triggering § 1226(c)'s custodial provisions. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025) (codified as amended at § 1226(c)(1)(E)). The Amendment mandated custody for aliens inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) who are charged, arrested, or convicted of burglary, theft,

larceny, shoplifting, assault of a law enforcement officer, or any crime resulting in death or serious bodily injury to another person. 8 U.S.C. § 1226(E)(i)-(ii).

### B.  Overview of Due Process in Immigration Context

The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. The core concept of due process is protection of the individual against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Due process comes in two varieties. Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the idea of ordered liberty. *Id.* at 847. Procedural due process, by contrast, requires notice and an opportunity to be heard appropriate to the nature of the case before depriving an individual of a life, liberty, or property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Immigration proceedings are civil in nature, and as such, the Government's interests are non-punitive, such as ensuring the appearance of an alien at future immigration proceedings and protecting the community from danger. *Id.*

The Constitution gives the political branches "plenary authority to decide which aliens to admit" and the "power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139. An alien seeking initial entry to the United States is only entitled to the process authorized by Congress. *Id.* at 138-39. "While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into

11

this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107 (holding that alien detained near border shortly after unlawful entry did not "effect an entry" and only has those rights regarding admission that Congress provided by statute). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

## V.    ANALYSIS

### A.  The Court should not deny the Petition for failure to exhaust administrative remedies.

Respondents argue that the Court should dismiss the Petition on exhaustion grounds. The Court disagrees.

The INA mandates exhaustion as to final orders of removal, but it contains no exhaustion provision regarding challenges to preliminary custody or bond determinations. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Although § 2241 does not expressly require a petitioner to exhaust direct appeals before filing a petition for habeas corpus, as a prudential matter, habeas petitioners must exhaust available administrative remedies before seeking habeas relief under § 2241. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Where exhaustion is not statutorily required, "sound judicial discretion governs." *Gonzalez*, 355 F.3d at 1016 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). "A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza*, 596 F.3d at 1203.

There is nothing in the record as to whether Petitioner requested a bond hearing, but it appears no bond hearing has been held. The BIA's *Yajure Hurtado* decision is binding on immigration courts and appears to categorically deny relief to noncitizens like Petitioner who DHS now considers to be subject to mandatory detention under § 1225(b). If Petitioner had asserted his right to a bond hearing in his immigration case, the immigration judge, being bound by *Yajure Hurtado*, would deny his request for release for lack of jurisdiction to grant bond. Consequently, the Court recommends finding that the futility exception to exhaustion applies and this Court may consider the habeas petition. *Cf. Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-010131-KG-JFR, 2025 WL 3187432, at *4 (D.N.M. Nov. 14, 2025) ("Under *Hurtado*, Immigration Judges ("IJs") lack jurisdiction to provide § 1226(a) bond hearings to individuals in Mr. Pu Sacvin's position, rendering any attempt to seek relief directly from the agency futile."); *Mateo Francisco v. Dedos*, No. 1:25-cv-1229 MIS-GJF, 2026 WL 145456, at *8 (D.N.M. Jan. 20, 2026) (explaining that, where petitioner has shown that, had he asserted right to bond hearing, immigration judge, being bound by *Yajure Hurtado*, would deny his request for release for lack of jurisdiction to grant bond, futility exception to exhaustion applies and court may consider habeas petition), *PFRD adopted by* 2026 WL 300319 (D.N.M. Feb. 4, 2026).

**B.   Petitioner's detention for months without bond hearing violates INA.**

The Court construes the Petition as implicitly asserting that § 1226 governs his detention, requiring a bond hearing. For their part, Respondents argue that Petitioner, who entered the United States without inspection or valid documents and is subject to removal, is an "applicant for admission," thereby necessarily "seeking admission," and subject to mandatory detention under § 1225(b)(2)(A). *See* Resp. 10-11, Dkt. No. 6.

13

As an initial matter, the Court must address what Respondents are *not* arguing. Respondents have not asserted in their written response that Petitioner must be detained based on his arrest for petit larceny under the Laken Riley Act. Although there is a statement in his Form I-213 indicating that he was arrested "as per S.5 – Laken Riley Act" based on his Petit Larceny charge, *see* Dkt. No. 6-1 at 2, Respondents do not rely on this purported fact in their argument. Nor do they contend that § 1225(b)(1) applies. Instead, Respondents argue only that Petitioner is appropriately detained under § 1225(b)(2). The Court therefore recommends limiting the statutory analysis to whether § 1225(b)(2) applies and not considering whether Petitioner's petit larceny arrest subjects him to mandatory detention under the Laken Riley Act. *See Coones v. Bd. of Cty. Comm'rs of Unified Government of Wyandotte Cty./Kansas City*, 166 F.4th 1, 27-28 (10th Cir. 2026) (explaining that failure to raise argument or failure to adequately brief argument forfeits or waives argument).

Turning to Respondents' assertion that § 1225(b)(2)(A)'s mandatory detention applies in this case, the Court disagrees. While Petitioner is an applicant for admission, he is not "seeking admission" and does not fall within § 1225's scope. Because § 1225(b)(2)(A) does not apply, Respondents may detain him only under § 1226(a) and must grant him the process that statute affords him. *Cf. Castillo v. De Andra Ybarra*, No. CIV 25-1074 JB/JFR, 2026 WL 370497, at *2, 35-37 (D.N.M. Feb. 10, 2026) (concluding that petitioners, while applicants for admission, were not seeking admission under § 1225(b)(2) where they arrived in the United States many years prior without inspection and were detained in the interior of the United States); *Garcia Lopez v. Castro*, No. Civ. 25-1144 JB/SCY, 2026 WL 524082, at *34-35 (D.N.M. Feb. 25, 2026) (holding that, where noncitizen first arrived in United States without inspection about 23 years ago and has no

14

pending application or has taken no other action indicating he is actively seeking admission, United States may only detain him in accordance with § 1226(a)'s statutory provisions, not § 1225(b)(2)).

The text of § 1225(b)(2)(A) makes clear that it applies to (1) "an applicant for admission", (2) who is "seeking admission," and (3) "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The provision therefore limits mandatory detention only to those applicants for admission who are also seeking admission. *See Castanon-Nava v. U.S. Dept. of Homeland Security*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("And while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A)."); *Castillo*, 2026 WL 370497, at *18 (explaining that "seeking admission" has separate meaning and narrows broader universe of "applicants for admission"). To construe "applicant for admission" to be the same as an alien "seeking admission" would render the latter phrase surplusage. *See Castanon-Nava*, 161 F.4th at 1061. Had Congress intended all applicants for admission to be detained, it could have drafted § 1225(b)(2)(A) far more simply: "Subject to subparagraphs (B) and (C), if the examining immigration officer determines that an applicant for admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained…." Instead, Congress limited detention to those applicants for admission who are not clearly and beyond a doubt entitled to be admitted *and* who are "seeking admission." 8 U.S.C. § 1225(b)(2)(A).

Furthermore, the statute's use of the present participle "seeking" demonstrates the need for the noncitizen to be taking some action *at present* in attempting to gain admission. This interpretation also accords with § 1225(a)(3), which suggests the terms are not coterminous: "All aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission*

15

or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). If the terms had the same meaning, it would be redundant to use "seeking admission" in § 1225(a)(3).

The Court is well aware that two circuits, in 2-1 decisions, have concluded the opposite. The Eighth Circuit agreed with the Fifth Circuit's reasoning in *Buenrostro-Mendez* that the phrase "applicant for admission" and "seeking admission" mean the same. *Avila v. Bondi*, __ F.4th __, 2026 WL 819258, at *3 (Mar. 25, 2026) (quoting with approval *Buenrostro-Mendez*, 166 F.4th at 502). Both circuits held that an alien who entered the United States many years ago without inspection and lacking legal documents authorizing his admission may be detained without bond under § 1225(b)(2)(A). *Id.* at *1, 6; *Buenrostro-Mendez*, 166 F.4th at 498-500. Neither *Avila* nor *Buenrostro-Mendez* is binding on this Court, however, and this Court declines to follow their reasoning.

Having determined that "seeking admission" has its own separate meaning, the Court must next discern what that meaning is. Guided by the statutory definition of "admission," the Court concludes that "seeking admission" is seeking "lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). While the term "lawful" is not separately defined in the INA, *see* 8 U.S.C. § 1101, the term lawful entry refers to the process in which an alien is inspected and granted entry into the United States by an immigration officer. *See Hing Sum v. Holder*, 602 F.3d 1092, 1096 (9th Cir. 2010) (explaining that "admission" under § 1101(a)(13)(A) "refers to a procedurally regular admission and not a substantively lawful admission"); *Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *35 (D.N.M. Jan. 20, 2026) ("Admission requires at minimum 'procedural regularity' with entry procedures.") (quoting *Matter of Quilantan*, 25 I. & N. Dec. 285, 290 (BIA 2010)). The Supreme

16

Court has confirmed that seeking admission is an affirmative act limited geographically to acts taken to enter the United States during the inspection process at the border. *See Jennings*, 583 U.S. at 289 ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission *into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).") (Emphasis added).

The structure and title of § 1225 also support this interpretation. The title of a statutory section can be a tool "'for the resolution of a doubt' about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)). Section 1225 is titled, "*Inspection* by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." 8 U.S.C. § 1225 (emphasis added). Those terms suggest that § 1225 applies during inspection at the border. The text of § 1225 reinforces that its scope is focused on the inspection process. *See*, *e.g.*, 8 U.S.C. § 1225(a)(3). "By anchoring § 1225 in inspection concepts that Congress defines, it signals that an inspection at the threshold of entry triggers the powers and procedures that follow." *Singh*, 2026 WL 146005, at *14. The implementing regulations likewise tie such inspections to the border. *See* 8 C.F.R. § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section."). Consequently, the text and structure of § 1225 suggest that an alien "seeking admission" is one who does so at the border.

The legislative history accords with this construction. Before passage of the IIRIRA, 8 U.S.C. § 1252(a)(1) provided that noncitizens arrested in the United States pending a determination of deportability could be released on bond. *See* 8 U.S.C. § 1252(a)(1) (1996). After

17

passage of the IIRIRA, § 1226(a) now governs the apprehension and detention of aliens on a warrant. 8 U.S.C. § 1226(a). When Congress passed the IIRIRA, it noted that the new § 1226(a) "restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. 104-469(I), at 229 (Mar. 4, 1996). The Executive Office for Immigration Review drafted regulations in 1997 similarly explaining that noncitizens present in the country without having been admitted or paroled, despite remaining applicants for admission, were nonetheless eligible for bond and bond redetermination under § 1226. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Given the longstanding practice of detaining noncitizens living in the United States on an arrest warrant and with the chance for bond, the legislative history suggests that Congress did not intend to alter this practice with the IIRIRA. Moreover, the fact that for decades the Executive Branch also did not interpret the IIRIRA in the manner urged by Respondents here or to use its purported mandatory detention authority signifies that "seeking admission" meant seeking lawful entry at the border. *Cf. Bankamerica Corp. v. United States*, 462 U.S. 122, 130-32 (1983) (explaining that, although authority granted by Congress cannot evaporate through lack of administrative exercise, the Government's failure for over 60 years to exercise the power it now claims under the statute strongly suggests that the statute should not be interpreted as granting such power).

Further supporting this interpretation is the following statutory history, as set forth by the Fifth Circuit in *Buenrostro-Mendez*:

18

> When Congress passed IIRIRA, it estimated that the detention mandate in § 1226(c) would require the detention of 45,000 new immigrants. See H.R. Rep. No. 104-469, pt. 1 at 118, 120, 123 (1996). Supposedly because Congress was worried about insufficient detention capacity, it included a provision that permitted delaying implementation of § 1226(c) for two years. IIRIRA § 303(b), 110 Stat. 3009-586 to 3009-587. IIRIRA did not include a similar provision for § 1225(b)(2)(A), even though, under the government's interpretation, § 1225(b)(2)(A) would require the detention of far more than 45,000 aliens. *See* H.R. Rep. No. 104-469, pt. 1, at 111 (estimating that about two million aliens who had entered without inspection were present in the United States around IIRIRA's enactment in 1996).

166 F.4th at 507. Although the majority in *Buenrostro-Mendez* declined to speculate on Congress's reasons for the deferred implementation of § 1226(c) but not of § 1225(b)(2)(A), that difference is compelling evidence that Congress did not view the IIRIRA as mandating the detention under § 1225(b)(2)(A) of the estimated two million aliens present in the United States who had not been admitted. *See id.* at 516 (J. Douglas, dissenting) ("Congress did not secretly require two million noncitizens to be detained without bond, when nothing like this had ever been done before, and the whole history of American immigration law suggested it would not be. We would expect more than simple statutory silence if, and when, Congress were to intend a major departure.") (internal quotations, citation, and footnote omitted). As Judge Douglas noted, construing the statute to expect the detention of millions of aliens in detention facilities strained by merely 45,000 people is a proverbially large elephant stuffed in a very small mousehole, and not one Congress envisioned when it passed the IIRIRA. *Id.* at 514-17.

The recent enactment of the Laken Riley Act adds weight to this understanding of Congressional intent. The Act expressly required detention for noncitizens inadmissible under § 1182(a)(6)(A) – aliens present without being admitted or paroled – if they commit certain listed crimes. That specification in the Act would not have been necessary if Congress understood § 1225(b)(2) to require mandatory detention of all inadmissible aliens already present in the United States. *See, e.g.*, *Munoz Teran v. Bondi*, Case No. 2:25-cv-01218-KWR-SCY, 2026 WL 161527,

at *4 (D.N.M. Jan. 21, 2026) (Riggs, J.) (explaining that respondents' interpretation would render superfluous Laken Riley Act); *Cortes v. Holt*, Case No. CIV-25-1176-SLP, 2025 WL 147432, at *1, 6 (W.D. Okla. Jan. 20, 2026) (concluding that enactment of Laken Riley Act lends further support for application of § 1226 to detention of aliens who entered without inspection or admission and resided in United States for years).

Significantly, immigration officers do not detain aliens under § 1225 pursuant to a warrant, whereas § 1226 expressly provides for the arrest and detention of an alien on a warrant. 8 U.S.C. § 1226(a). The regulations implementing § 1226 confirm that the Form I-200 is used for arrests pursuant to an immigration officer's authority under § 1226. *See* 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest."). Section 1226 also applies to aliens who are charged as inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E) (explaining that Attorney General shall take into custody any alien who is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) and is charged with certain identified crimes). The overall structure of §§ 1225 and 1226 demonstrates that detention under § 1225 is done as part of the inspection process upon arrival at the border before an alien makes entry into the United States, and that after entry, § 1226 – with its warrant and bond hearing protections – applies to the apprehension and detention of inadmissible aliens within the interior of the country. *See Reyes-Martinez v. Woosley*, Civil Action No. 4:25-cv-150-RGJ, 2025 WL 3680330, at *7 (W.D. Ky. Dec. 18, 2025) (explaining that § 1225 detainees are detained upon arrival as a statutory function of the inspection process, not via an arrest pursuant to administrative warrant, which supports conclusion that § 1225 is for individuals seeking admission at the border who do not need to be arrested).

20

After all, "government intrusions have always been tolerated at the border that would be intolerable in the interior, for the obvious reason that citizens and noncitizens alike expect to be able to go about their business without having to show that they are 'clearly and beyond doubt entitled to be admitted' if taken, or mistaken, for an otherwise inadmissible noncitizen." *Buenrostro-Mendez*, 166 F.4th at 519 (Douglas, J., dissenting).

Petitioner entered the United States on or about March 12, 2024, at which time DHS briefly detained him. DHS released him on an Order of Release on Recognizance (I-220A). Petitioner lived in the United States for well more than a year before ICE detained him in New York on November 13, 2025, pursuant to a Form I-200 Warrant of Arrest of Alien. A Form I-200 is found within Section 1226 implementing regulations, 8 C.F.R. § 236, which also require a bond hearing. At the time of his re-detention, Petitioner was not "seeking admission" as he had already entered the United States. He therefore is detained under § 1226 and is entitled to a bond hearing. The failure to provide Petitioner the requisite prompt bond hearing violates the INA. Moreover, even assuming that Petitioner is only entitled to the process afforded by Congress, Congress authorized noncitizens in Petitioner's situation to be afforded a bond hearing under § 1226. Consequently, Respondents' detention of Petitioner for more than four months without the requisite bond hearing violates both his statutory rights and his procedural due process rights. The Court therefore recommends granting the Petition.

### C. A prompt bond hearing in accordance with § 1226(a) is the appropriate remedy for violation of the INA.

Petitioner requests release from ICE custody or a prompt bond hearing at which the government bears the burden of justifying his continued detention. Petition, Dkt. No. 1 at 2 of 16. Respondents counter that this Court should not circumvent the immigration court by unilaterally shifting the burden of proof at future proceedings; rather, any bond hearing should be adjudicated

as any other § 1226 case. Resp. 14, Dkt. No. 6. Relying on § 1226(e), they further argue that the Attorney General's discretionary judgment regarding the application of § 1226 is not subject to review, and thus, this Court does not have authority to order immediate release from detention. *Id.*[4]

The Court recommends that the appropriate remedy for the § 1226 violation is a prompt bond hearing before an immigration judge, not immediate release. *See, e.g.*, *Castillo*, 2026 WL 370497, at *36 (explaining that, because noncitizen was not seeking admission, United States could not detain him under § 1225(b)(2), so it must detain him under § 1226(a) and afford him procedural protections the statute provides). As for the timing of the bond hearing, the Court recommends that the bond hearing be held within seven days. If Respondents are unable or decline to follow § 1226's statutory requirements, the Court recommends they release him immediately. *Id.*

For the initial custody determination by the arresting immigration officer, governing regulations place the burden on the alien to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). The BIA applied the same presumption in bond hearings before immigration judges. *See Castillo*, 2026 WL 370497, at *42 (quoting *In Re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999)). Some courts have shifted the burden to the government at the bond hearing to show by clear and convincing evidence that the petitioner is either a danger to the community or a flight risk. *See, e.g.*, *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-1031 KG/JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) (citing *Salazar v. Dedos*, 2025 WL 2676729, at *6 (D.N.M.)). The presiding judge, however, concluded that a remedy challenging the

---

[4] Section 1226(e) provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).

burden at a bond hearing is outside the scope of the writ of habeas corpus "unless the bond hearing's existing structure is so weighed against the alien that the alien has no chance to be released on bond." *Castillo*, 2026 WL 370497, at \*42. Because a § 1226(a) bond hearing requires only that the alien prove that he is not a flight risk or danger to the community, the current structure does not deny an alien a meaningful chance at success at achieving release. *Id.* The Court thus recommends that the presiding judge deny Petitioner's request that the Respondents carry the burden at the bond hearing and instead order that the bond hearing comply with § 1226 and its implementing regulations. *See id.*

## VI.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** the *Petition for Writ of Habeas Corpus* (**Dkt. No. 1**) should be **GRANTED IN PART and DENIED IN PART** as follows:

A. The Petition should be **GRANTED** as to the Petitioner's claims that his detention violates the INA and procedural due process.

B. Petitioner's request to issue a writ of habeas corpus ordering that an individualized bond hearing before an immigration judge be held within seven days should be **GRANTED**.

C. The request for immediate release should be **DENIED**.

D. Petitioner's request that the government bear the burden of justifying his continued detention at the bond hearing should be **DENIED**.

**SO RECOMMENDED.**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

**THE HONORABLE GREGORY J. FOURATT**
**UNITED STATES MAGISTRATE JUDGE**